SPRINT SOLUTIONS, INC., Sprint Communications Company L.P. and Boost Worldwide, Inc., Plaintiffs,

v.

Reginald ALDRIDGE, Arrice Aldridge and Damion Transou, Defendants.

Civil Action No. 1:14–CV–0128–TWP–DML.

United States District Court, S.D. Indiana.

Signed Sept. 26, 2014.

James B. Baldinger, Stacey K. Sutton, Carlton Fields Jorden Burt, P.A., West Palm Beach, FL, John D. Waller, Matthew Braxton Millis, Wooden & McLaughlin LLP, Indianapolis, IN, for Plaintiffs.

Reginald Aldridge, pro se.

Arrice Aldridge, pro se.

Damion Transou, pro se.

### *FINAL DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS REGINALD ALDRIDGE, ARRICE ALDRIDGE AND DAMION TRANSOU*

TANYA WALTON PRATT, District Judge.

Plaintiffs, Sprint Solutions, Inc., Sprint Communications Company L.P. and Boost Worldwide, Inc. (collectively "Sprint" or "Plaintiffs"), brought the above-captioned lawsuit against Defendants Reginald Aldridge, Arrice Aldridge and Damion Transou (collectively "Defendants") alleging that Defendants engaged in unlawful business practices involving the unauthorized

and deceptive bulk purchase and resale of new Sprint prepaid and postpaid wireless telephones (collectively "Sprint Phones" or "Phones") through various methods, including the use of "runners," "credit mules," account fraud, and mobile device theft; the theft of Sprint's subsidy investment in the Phones; the unlawful access of Sprint's protected computer systems and wireless network; the trafficking of Sprint's protected and confidential computer passwords; and the willful infringement of Sprint's trademark rights (collectively, the "Bulk Handset Theft and Trafficking Scheme" or the "Scheme").

Defendants and their co-conspirators perpetrate the Bulk Handset Trafficking Scheme by acquiring large quantities of new Sprint Phones directly from Sprint and/or from Sprint authorized dealers and retailers, and by soliciting others to acquire new Sprint Phones in large quantities for the benefit of Defendants. In particular, Defendants have acquired at least 106 Sprint Phones by placing fraudulent orders on the accounts of legitimate customers and reselling those Sprint Phones for profit. Defendants and its co-conspirators acquire the Sprint Phones with the knowledge and intent that the Phones will not be activated for use on the Sprint wireless network. Instead, the new Phones are trafficked and resold overseas where phones are not subsidized by wireless carriers (as they are in the United States) and where phones are not as readily available, and, thereby command high prices.

In some cases, Defendants acquire the Sprint Phones with the knowledge and intent that the Phones will be computer-hacked, or "unlocked," to disable software installed in the Phones by the manufacturers at the request and expense of Sprint, which enables activation of the Sprint Phones exclusively on Sprint's wireless system. The software allows Sprint to offer the Phones at a discount to the consumer while protecting Sprint's subsidy investment in the Phone. Plaintiffs further allege that the illegally unlocked Phones are trafficked and resold as new by Defendants, at a premium, under the Sprint trademarks.

Sprint Phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the Phones. These Terms and Conditions are set forth in printed inserts that are packaged with each Phone and are posted on Sprint's website. Pursuant to the Terms and Conditions of Sprint Phones, purchasers agree, among other things: (a) to pay the service charges and other related fees; (b) to activate the Sprint Phones on the Sprint CDMA network; (c) not to resell the Sprint Phones and related products and services; and (d) not to use the Phones for a purpose that could damage or adversely affect Sprint.

As a result of Defendants' involvement in the Bulk Handset Trafficking Scheme, Sprint asserted claims against Defendant for state common law unfair competition, tortious interference with business relationships and prospective advantage, civil conspiracy, unjust enrichment, conspiracy to induce breach of contract, common law fraud, fraudulent misrepresentation, violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, federal trademark infringement under 15 U.S.C. § 1114, federal common law trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B), contributory trademark infringement and conversion. Based on the undisputed positions advocated by Plaintiffs, and having reviewed the Complaint and file and being otherwise duly and fully advised in the premises, it is hereby,

**ORDERED, ADJUDGED** and **DE-CREED** that:

1. This Court has jurisdiction over all the parties and all of the claims set forth in Sprint's Complaint.

2. The Court finds that Sprint has the right to use and enforce rights in the standard character Sprint® mark and stylized Sprint® Virgin Mobile, payLo, Assurance Wireless and Boost Mobile trademarks (collectively, the "Sprint Marks"), as depicted below:

Sprint uses the Sprint Marks on and in connection with its telecommunications products and services. The Sprint Marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with Sprint.

3. The Court finds that the Terms and Conditions and the language in and on the packaging constitute a valid and binding contract enforceable between Sprint and each of its customers. The Court finds the Terms and Conditions set forth certain rights and restrictions on the use of Sprint Phones. Among other things, the Terms and Conditions: (a) require that the customer pay applicable service charges and other related fees; (b) indicate that the Phone is designed to be activated on the Sprint CDMA network; (c) prohibit resale of Sprint Phones and related products and services; and (d) prohibit using the Phones for a purpose that could damage or adversely affect Sprint, for which Sprint is entitled to relief.

4. The Court finds that the conduct set forth in the Complaint constitutes the following violations: common law unfair competition (Count 1); tortious interference with business relationships and prospective advantage (Count 2); civil conspiracy (Count 3); unjust enrichment (Count 4); conspiracy to induce breach of contract (Count 5); common law fraud (Count 6); fraudulent misrepresentation (Count 7); trafficking in computer passwords, 18 U.S.C. § 1030(a)(6) (Count 8); unauthorized access, 18 U.S.C. § 1030(a)(5)(C) (Count 9); unauthorized access with intent to defraud, 18 U.S.C. § 1030(a)(4) (Count 10); federal trademark infringement, 15 U.S.C. § 1114 (Count 11); federal common law trademark infringement and false advertising, 15 U.S.C. § 1125(a)(1)(A) and (B) (Count 12); contributory trademark infringement (Count 13); and conversion (Count 14); and such conduct has caused substantial and irreparable harm to Sprint, and will continue to cause substantial and

irreparable harm to Sprint unless enjoined.

5. Sprint has suffered damages, including loss of goodwill and damage to its reputation, as a result of Defendants' conduct that far exceeds the $5,000 aggregate annual damages under the Computer Fraud and Abuse Act. On review and consideration of all relevant factors, Sprint is entitled to damages and injunctive relief on the claims as set forth in the Complaint.

6. On review and consideration of all relevant factors, Sprint is entitled to damages and injunctive relief on the claims as set forth in the Complaint.

■ 7. The Court finds that Defendants unlawfully trafficked in at least 106 Sprint Phones, 66 of which were "smart phones" and 40 of which were "feature phones."[1] Sprint's damages for these 106 Phones are broken down into two components: (1) the cost of the Phones; and (2) Sprint's lost profits, which includes the loss of the subsidy investment. The total cost of the 106 Phones is $26,850.09. This represents the amount Sprint would have received had the Phones been purchased by a legitimate Sprint customer. Sprint also lost significant revenue as a direct result of Defendants' illicit acquisition and resale of Sprint Phones. Sprint's lost profits amount to $203,534, which consists of lost profits of $961 for each feature phone and lost profits of $1,919 for each smart phone. Thus, the total damages resulting from the fraudulent purchase of these 106 Sprint Phones is $26,850.09 (cost of the Phones) + $203,534 (lost profits) = $230,384.00. In light of Defendants' willful violations of the Lanham Act and affirmative absence from this case, and because Defendants have caused damage significantly greater than that actually confirmed by Sprint's investigation, the Court will treble these damages to $691,152.00.

8. Sprint is also entitled to an award of its reasonable attorneys' fees and costs in the amount of $25,041.00.

9. Sprint is also entitled to an award of reasonable investigation fees in the amount of $3,423.00.

10. Final judgment is hereby entered against Defendants Reginald Aldridge, Arrice Aldridge and Damion Transou, jointly and severally, and in favor of Sprint, on all of the claims set forth in Sprint's Complaint in the principal amount of Seven Hundred and Nineteen Thousand Six-Hundred and Sixteen Dollars and Zero Cents ($719,616.00 (U.S.)), which shall bear interest at the legal rate, for which let execution issue forthwith.

11. Defendants and all of their past and present agents, employees, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to act for them or on their behalves, including, but not limited to, any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with Defendants or Defendants' representatives, agents, assigns, employees, independent contractors, associates, servants, and any and all persons and entities in active concert and participation with Defendants who receive notice of this Order, shall be and hereby are PERMANENTLY ENJOINED from:

    a.  purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any Sprint Phones;

---

1. Smart phones are distinguished from feature phones by increased functionality resulting from the incorporation of proprietary operating systems and the ability to make use of third party software. Breithaupt Decl., at ¶ 5 n. 1.

b. supplying Sprint Phones to or facilitating or in any way assisting other persons or entities who Defendant knows or should know are engaged in the purchase or sale of Sprint Phones or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in Sprint Phones;

c. engaging in any of the conduct described in the Complaint as the "Bulk Handset Trafficking Scheme;"

d. supplying Sprint Phones to or facilitating or in any way assisting other persons or entities who Defendant knows or should know are engaged in any of the acts prohibited under this Permanent Injunction, including, without limitation, the buying and/or selling of Sprint Phones;

e. contacting Sprint Customer Service lines and/or Sprint Business Care (directly or indirectly) for the purposes of obtaining Sprint Phones, Sprint products and/or Sprint services; and,

f. knowingly using the Sprint Marks or any other trademark, service mark, trade name and/or trade dress owned or used by Sprint now or in the future, or that is likely to cause confusion with Sprint's Marks, without Sprint's prior written authorization.

12. Pursuant to the Lanham Act, Defendants shall deliver and turn over all Sprint Phones and products in its possession, or subject to its custody or control, bearing or infringing any Sprint trademark or confusingly similar copy thereof, to Sprint within ten (10) days of the date of this Final Judgment.

13. The purchase, sale or shipment of any Sprint Phone without Sprint's prior written consent within or outside of the continental United States shall be deemed a presumptive violation of this injunction.

14. Defendants waive any and all rights to challenge the validity of this Final Judgment in this Court or in any other court, and specifically waive their right of appeal from the entry of the Final Judgment.

15. The Court retains jurisdiction to enforce any violation of the terms of this Default Judgment and Permanent Injunction. Any violation shall result in an order finding the Defendants in contempt and requiring payment of compensatory damages to Sprint in an amount of $5,000 for each Sprint Phone that Defendants are found to have purchased, sold or unlocked in violation of this Injunction. The Court finds that these amounts are compensatory and will serve to compensate Sprint for its losses in the event Defendants violate the terms of this Order.

16. The address of Plaintiffs is 6200 Sprint Pkwy, Overland Park, Kansas 66251.

17. The last known address of Defendant Reginald Aldridge is 124 Berry Street, Park Forest, Illinois 60466.

18. The last known address of Defendant Arrice Aldridge is 124 Berry Street, Park Forest, Illinois 60466.

19. The last known address of Defendant Damion Transou is 58 Wexford Cove, Humboldt, Tennessee 38343.